***********
Upon review of the competent evidence of record with reference to the errors assigned by the appealing party, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence of record, affirms and adopts the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and after the hearing as: *Page 2 
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above; or the named employer is self-insured.
4. The employee's average weekly wage will be stipulated to by the parties.
5. The employee sustained an injury on or about August 21, 2003, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment and is compensable.
7. The parties' proposed issues for determination:
 a. What, if any, indemnity benefits is the Plaintiff entitled to after May 13, 2005?
 b. Is the Plaintiff entitled to ongoing medical treatment for injuries sustained in the compensable accident arising out of and in the course of her employment?
 c. Is either party entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 and I.C. Rule 802
 *********** *Page 3 
Based upon all of the competent, credible evidence presented, the Full commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner Plaintiff was 44 years old. Plaintiff graduated from high school and attended some college. Plaintiff received her Certified Nursing Assistant certificate from Cape Fear Community College. She also participated in Job Corps wherein she obtained a Certified Retail Sales certificate and attended Troutman Beauty School for cosmetology. She did not receive her license for cosmetology.
2. Plaintiff has operated Puggie Bear's Day Care, a child day care business, within her home for eight (8) years. Plaintiff worked part-time to supplement her primary income earned as a day care provider. Previously, Plaintiff worked as a Certified Nursing Assistant (CNA) for approximately 18 years.
3. On or about January 2001, Plaintiff began employment with Defendant-Employer, a commercial cleaning and janitorial business, providing services on a contract basis. Plaintiff's initial assignment was as a janitor at the Corning client's facility for approximately one year before moving to the PPD client's facility. Plaintiff's job duties primarily consisted of supervising four to five employees to ensure completion of crew assignments. Occasionally, Plaintiff would perform the cleaning tasks of a crew member who was absent from the shift.
4. On or about August 21, 2003, while executing her normal job duties, Plaintiff bent over to pick up a paperclip and sticky note to clean the floor. She heard a pop and immediately felt her right shoulder get hot. *Page 4 
5. On August 31, 2003, Plaintiff presented at New Hanover Regional Medical Center for an examination of her right shoulder. X-rays of Plaintiff's right shoulder revealed rotator cuff abnormality.
6. On September 25, 2003, Dr. Esposito's physician assistant, Jason Fedak, PA-C examined Plaintiff and diagnosed her with right shoulder impingement syndrome, administered a cortisone steroidal injection to the right shoulder joint, restricted Plaintiff's use of her right arm and prescribed a regimen of physical therapy.
7. On October 2, 2003, Dr. Esposito's physician assistant, T. Shawn Fitzgerald, PA-C, examined Plaintiff who reported two days relief from pain after the cortisone injection but the pain returned; pain beginning at her right lateral arm to her elbow; pain when she lies on her side at night; symptoms are worsened with range of motion and that Aleve (over the counter pain medicine) helps relieve symptoms. The numbness and tingling in her right hand had resolved and she denied any other complaints. Mr. Fitzgerald ordered an MRI of the right shoulder, continued Plaintiff's light duty restriction of no use of right arm and no lifting over ten (10) pounds; and prescribed a regimen of physical therapy designed to increase range of motion/flexibility and strength in the right arm.
8. On October 24, 2003, Dr. Esposito and Mr. Fitzgerald examined Plaintiff and reviewed the MRI report. The MRI revealed a full thickness tear with retraction involving the supraspinatus tendon and degenerative changes in the AC joint. Plaintiff elected to undergo surgical arthroscopic and rotator cuff repair.
9. On or about October 28, 2003, Defendant-Employer completed a Form 19, Employer's Report of Employee's Injury to document the incident. Plaintiff had reported the incident to two supervisors two to four (2-4) days after it occurred and her subsequent *Page 5 
emergency room treatment for the right shoulder ten (10) days after the incident. Defendants also completed a Form 19 based on the information received from Defendant-Employer upon initial investigation. Plaintiff continued working on August 21, 2003. The I.C. Form 22 shows she did not miss any regularly scheduled work shifts.
10. On January 9, 2004, Dr. Esposito performed arthroscopic surgery on Plaintiff's right shoulder. He observed and repaired the joint lining inflammation, rotator cuff tear and torn bicep tendon. Dr. Esposito opined to a reasonable degree of medical certainty that Plaintiff's shoulder condition arose from the work place incident. Plaintiff was medically released from all work for post surgical recovery. Dr. Esposito prescribed physical therapy to assist Plaintiff with regaining her strength post surgery pursuant to standard medical protocol.
11. On January 19, 2004, Defendants completed a Form 60 notifying the Commission of their admission of Plaintiff's right to receive compensation for the August 21, 2003, accident. Defendants did not provide a description of the injury on the form. The temporary total disability payments began effective January 9, 2004, at a rate of $168.01, based on the wage information available at that time.
12. On March 10, 2004, Mr. Fedak examined Plaintiff for Dr. Esposito and released her to return to work with light duty restrictions of no use of her right arm. However, Defendant-Employer did not have a position for which Plaintiff qualified that would accommodate her work restrictions.
13. On April 5, 2004, Dr. Esposito and Mr. Fedak reviewed Plaintiff's medical status and requested nerve conduction studies to determine the existence of carpal tunnel syndrome due to Plaintiff's continued reports of pain. A follow-up appointment was scheduled for one week to review the test results. *Page 6 
14. On April 22, 2004, Plaintiff returned to work. Her March 10, 2004, work restrictions were in effect. Defendant-Employer was able to place Plaintiff in a supervisor position so that she did not have to perform actual house cleaning activities outside of her restrictions. The position was a standard position within the company or in the job market in that a "non-working" supervisor has either a large number of employees upon which to perform quality checks or must travel to locations that are not in close proximity to each other in order to perform quality checks. Plaintiff worked in the evenings from 4:30 to 8:30 p.m. Defendant-Employer was satisfied with Plaintiff's execution of her job duties.
15. On August 30, 2004, Dr. Esposito examined Plaintiff and reviewed the results of the August 24, 2004 nerve conduction study, which was positive for carpal tunnel syndrome. Plaintiff elected to undergo carpal tunnel release surgery performed on September 24, 2004 by Dr. Esposito. Defendants paid the associated medical bills and temporary total disability benefits to Plaintiff for her lost time.
16. On November 19, 2004, Dr. Esposito examined Plaintiff and was of the opinion that she was at maximum medical improvement for her right shoulder condition. Dr. Esposito assessed a permanent partial disability rating of ten percent (10%) to the right arm and opined, to a reasonable degree of medical certainty, that Plaintiff's right arm condition was directly related to the August 21, 2003, workplace accident. Dr. Esposito also gave Plaintiff a five percent (5%) permanent partial disability rating to her hand but he utilized the North Carolina Industrial Commission Ratings Guide to separate the Plaintiff's hand condition from the shoulder condition. Dr. Esposito opined, however, that he did not attribute the disability to Plaintiff's wrist/hand to the August 21, 2003 injury. *Page 7 
17. On December 15, 2004, Plaintiff completed a Functional Capacity Evaluation (FCE) administered by David Clawson at Ergo Science. The summary report indicated that Plaintiff was capable of performing a "light level" of work for an eight (8)-hour day.
18. On May 15, 2005, Defendant-Employer experienced the loss of a client contract for janitorial services and was required to lay off approximately fifteen (15) employees who could not be placed in available positions. Plaintiff was included in the lay-off, but was eligible for rehire. Plaintiff never contacted Defendant-Employer to inquire about open positions and re-hire as a supervisor (a position for which she felt she was overly qualified), as a manager, or any other position that might be available, which would not require use of her right hand per Dr. Esposito's medical restrictions.
19. Plaintiff testified that since May 15, 2005, she has inquired about employment with two (2) day care providers to perform services as a teacher, which would allow her to avoid using her right hand. She also testified that she relied on assistance from volunteers to provide care for one (1) or two (2) children placed in her licensed home day care. She further testified that Social Services pays $400.00, or more, per month depending on the age of the child, if placed full-time and that the amount is prorated if the child is placed less than full time. Plaintiff manages her business records, assists with the preparation of her taxes and competently articulated her understanding of business tax deductions and business procedures. Plaintiff also submitted North Carolina Employment Security Commission (ESC) records documenting that her benefits year started March 26, 2006, and that she qualified for weekly benefits of $116.00 per week and had an earnings allowance of $23.29 per week. Plaintiff's records reflect that she complied with ESC rules and regulations governing the receipt of unemployment benefits starting on the benefits week ending on April 7, 2006, through the benefits week ending *Page 8 
September 16, 2006. Plaintiff has not proven by the greater weight of the evidence that she has made reasonable efforts to find suitable employment after her lay-off for reasons unrelated to her injury.
20. On September 1, 2005, Dr. Esposito examined Plaintiff due to reported worsening wrist and shoulder pain over the previous three (3) weeks. Dr. Esposito referred Plaintiff to Dr. Ligouri to do testing and evaluation for reflex sympathetic dystrophy (RSD) unrelated to the rotator cuff injury. On September 11, 2006, Dr. Ligouri examined Plaintiff for continuing right shoulder and arm pain. Dr. Ligouri is board certified in physical medicine and rehabilitation.
21. On October 10, 2006, an MRI was conducted on Plaintiff's neck, which revealed "bilateral paramedical disc protrusion at C5-6 with bilateral C6 root mass effect and right foraminal narrowing" and minimal cervical spondylosis at other levels. After reviewing the results of the MRI, Dr. Ligouri drafted a letter addressed "To Whom it May Concern" in which he opined that Plaintiff's "original problem was a cervical nerve root compression masquerading as a shoulder injury" and that "her original problem was a sixth cervical nerve root compression misdiagnosed as a rotator cuff injury and carpal tunnel syndrome." He suggested that Plaintiff undergo cervical epidural steroid injections.
22. Dr. Ligouri was deposed and reiterated the opinions stated in his letter. He also testified, however, that an audible pop emanating from the shoulder would be consistent with a rotator cuff injury rather than a cervical injury. Upon being presented with the report from the MRI that Plaintiff had of her shoulder on October 17, 2003, which showed a full thickness rotator cuff tear, Dr. Ligoiri admitted that the results of that MRI were not consistent with his opinion that Plaintiff was misdiagnosed with a rotator cuff tear. He agreed that Plaintiff did have a tear of her rotator cuff and testified that he did not know whether or not it was from lifting the *Page 9 
paperclip at work. Dr. Ligouri opined that it is very unlikely Plaintiff suffered both a rotator cuff tear injury and a cervical injury on August 21, 2003.
23. With respect to his opinion that Plaintiff suffered a compression of the sixth cervical nerve root as a result of her August 24, 2003, injury at work, Dr. Ligouri testified, "She-the basis is that she didn't have these symptoms before the work related injury and they started at the time when she was injured at work; and she had sudden onset of pain that went down her arm; and, it came from something that she did when she tried to pick up this paperclip from the floor. I don't know how it happened, but I do believe that it happened then."
24. Dr. Esposito is a board certified Orthopedic Surgeon at Carolina Sports Medicine who has practiced since 1989. Currently, Dr. Esposito's medical practice focuses primarily on shoulders and knees.
25. Dr. Esposito testified that, upon Plaintiff's first visit to his office in September 2003, tests were performed on Plaintiff to distinguish between the possibility of a cervical injury versus a shoulder injury. Dr. Esposito felt that had Plaintiff sustained a cervical injury, she more likely than not, would not have had full range of motion in her neck and would have experienced some pain when he moved her neck back and forth during testing. He also opined that, more likely than not, Plaintiff was suffering from a shoulder injury upon her initial visit to his office.
26. When presented with Dr. Ligouri's opinion that Plaintiff's symptoms have all along stemmed from a cervical nerve root compression rather than a shoulder injury, Dr. Esposito responded, "I completely disagree. Dr. Esposito testified it was his opinion to a reasonable degree of medical certainly that Plaintiff suffered a shoulder injury rather than a cervical injury on that date. When asked what was the basis of his opinion, Dr. Esposito testified as follows: *Page 10 
 A. She came in complaining of shoulder pain. She had a full range of motion, a non-painful range of motion of the neck. All of those signs — all of her complaints were consistent with rotator cuff inflammation impingement or a gradation of that, as I explained earlier. All of her symptoms were consistent with that. She responded temporarily to cortisone injection. She was given a — she had an MRI consistent — and showed up a — which was accurate in the sense that the rotator cuff was found at surgery, along with the biceps tendon partial tear. I mean, I just — I can't imagine any more evidence than that.
 Q. For the record, how confident are you in your opinions stated today?
 A. Ninety-nine point nine, nine, nine percent with repeating decimal over the 9.
27. The Full Commission gives greater weight to the medical opinions of Dr. Esposito. Based upon the greater weight of the evidence, on August 21, 2003, Plaintiff suffered a shoulder injury, not a cervical injury.
28. Defendants accepted Plaintiff's shoulder injury and authorized all necessary medical treatment for Plaintiff's shoulder. Additionally, Defendants paid for treatment, surgery, and temporary total disability benefits related to Plaintiff's carpal tunnel syndrome, although the evidence does not establish that Plaintiff's carpal tunnel syndrome resulted from the August 31, 2003, compensable workplace accident.
29. Defendants have paid Plaintiff all temporary total disability benefits she is owed as a result of her August 21, 2003, shoulder injury.
30. On November 19, 2004, Plaintiff reached maximum medical improvement with respect to her compensable shoulder injury.
31. To the extent Plaintiff suffers from a cervical injury, such injury is not the result of the August 21, 2003, workplace incident. *Page 11 
33. Neither Plaintiff, nor Defendants unreasonably prosecuted or defended this claim.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The employee has the burden of proving disability as a result of a work-related injury. Admitting compensability of an injury by either the filing of a Form 60 or by paying benefits beyond the statutory period provided for in N.C. Gen. Stat. § 97-18 does not create a presumption of continuing disability as would a Form 21. Sims v. Charmes,142 N.C.App. 154; 542 S.E.2d 277 (2001).
2. "Disability" within the meaning of the Workers' Compensation Act is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). To show the existence of a disability under the Act, an employee has the burden of proving: (1) that he was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that he was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that his incapacity to earn was caused by his injury. Demery v. Perdue Farms, Inc.,143 N.C.App. 259; 545 S.E.2d 485 (2001); citing Hilliard v. Apex CabinetCo., 305 N.C. 593, 595; 290 S.E.2d 682, 683 (1982).
3. A Plaintiff seeking to prove the existence of disability may meet her initial burden of production by producing: (1) medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) evidence that she is capable of some work *Page 12 
but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) evidence that she has obtained other employment at a wage less than that earned prior to the injury. Demery v. Perdue Farms, Inc.,143 N.C.App. 259; 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 765; 425 S.E.2d 454, 457
(1993).
4. Plaintiff has failed to present sufficient medical evidence demonstrating that she is, as a result of her August 21, 2003, compensable workplace injury, incapable of work in any employment. N.C. Gen. Stat. § 97-2(9).
5. Plaintiff has failed to establish that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment. Plaintiff has failed to present sufficient evidence to support a conclusion that she exerted reasonable efforts to obtain other employment after her lay-off resulting from the expiration of her Employer's janitorial services contract. Id.
6. Plaintiff failed to present sufficient evidence to demonstrate that she is capable of some work but it is futile for her to search for work because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment. Id.
7. Plaintiff failed to present sufficient evidence that she has obtained other employment at a wage less than that earned prior to the injury due to the August 21, 2003, injury. Id.
8. Plaintiff failed to present credible evidence establishing a causal relationship between her August 21, 2003, compensable accident and her cervical spine condition. Therefore, Defendants are not liable for any medical treatment or indemnity benefits in connection with her cervical spine condition. N.C. Gen. Stat. § 97-25. Young v. Hickory Bus. *Page 13 Furniture, 353 N.C. 227, 230; 538 S.E. 2d 912, 915 (2000); Holley v.Acts, Inc., 357 N.C. 228, 232; 581 S.E.2d 750, 753 (2003).
9. Plaintiff is at maximum medical improvement with respect to her shoulder injury and retains a ten percent (10%) permanent partial impairment of the right arm/shoulder as a result of her shoulder injury. Although Plaintiff has been given a five percent (5%) permanent partial impairment rating of the right hand due to carpal tunnel syndrome, this condition is not causally related to her injury by accident on August 21, 2003, and is not compensable. N.C. Gen. Stat. § 97-31.
10. Defendants have paid Plaintiff all of the indemnity benefits to which she is entitled under the Act. N.C. Gen. Stat. § 97-29.
11. Neither Plaintiff nor Defendants unreasonably prosecuted or defended this claim. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional medical compensation for treatment to her cervical spine condition is denied.
2. Plaintiff's claim for indemnity benefits following her lay-off from Defendant-Employer on May 15, 2005, is denied.
3. Defendants shall pay to Plaintiff permanent partial disability compensation at a rate to be stipulated by the parties for twenty-four (24) weeks for the ten percent (10%) rating to her right arm/shoulder. This compensation has accrued and shall be paid in a lump sum. *Page 14 
4. Plaintiff's counsel is awarded an attorneys fee of twenty-five percent (25%) of the benefits due Plaintiff in paragraph 3 above. Defendants shall deduct this fee from the amount due Plaintiff and pay it directly to Plaintiff's counsel.
5. It is hereby ordered that if the parties are unable to stipulate to average weekly wage, either party may file a motion asking the Full Commission to decide this issue or remand the matter to a Deputy Commissioner for additional evidence on this issue.
6. Defendants shall pay the cost.
This the ___ day of January 2008.
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ DANNY L. McDONALD COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1